```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                  )
LISA OBERG,                       )
               Plaintiff,         )
                                  )
          v.                      )
                                  )
MICHAEL J. ASTRUE,                )   CIVIL ACTION NO.
                                  )   1:10-CV-11756-PBS
               Commissioner of    )
               Social Security,   )
                                  )
               Defendant.         )
                                  )
```

**MEMORANDUM AND ORDER**

March 1, 2012

SARIS, U.S.D.J.

## I.  Introduction

Plaintiff Lisa Oberg ("Oberg"), who suffers from various physical ailments, seeks review of the decision denying her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. § 405(g).  The plaintiff argues that the Administrative Law Judge ("ALJ") failed to properly weigh the opinion of her treating physician, Dr. Sheldon Davis.[1]

---

[1] The plaintiff also argues that the ALJ erred in assessing her credibility and that the ALJ's residual functional capacity assessment was not supported by substantial evidence in the record.  Because the Court concludes it is unclear whether the ALJ properly weighed Dr. Davis's opinion and consequently remands the case to the ALJ so that he can apply, and explain his application of, the treating physician rule, these additional

For the reasons set forth below, the Court **ALLOWS** Oberg's motion for remand, and **DENIES** the Commissioner's motion to affirm the decision.

## II. Procedural History

Ms. Oberg filed applications for SSDI and SSI on April 23, 2008. (Tr. 103-109, 110-113). She claimed an inability to work beginning June 30, 2006, (Tr. 103, 110) due to chronic lower back pain caused by arthritis in her neck and a herniated disc, as well as chronic pain in her right arm. (Tr. 137). Those applications were denied initially (Tr. 54-57) and upon reconsideration (Tr. 59-64), and Oberg requested an administrative hearing. (Tr. 67). An administrative hearing was held before Administrative Law Judge ("ALJ") Barry H. Best on March 9, 2010. Oberg attended the hearing with her attorney. (Tr. 20-47). The only witnesses were Oberg and a vocational expert, Mr. Kenneth Smith. (Tr. 20-47). On April 16, 2010, the ALJ issued a decision finding that Oberg was disabled beginning on February 18, 2010, the day she became 50 years old and her age category consequently changed, but was not disabled before that date. (Tr. 4-19).

The ALJ concluded that Oberg was not disabled before February 18, 2010, because she had the residual functional

arguments are not addressed.

capacity to perform sedentary work with some exertional limitations.  (Tr. 12).  While he found that Oberg had cervical degenerative disc disease, right knee degenerative joint disease, and a thoracic cyst, the ALJ determined that "the severe degree of pain alleged by the claimant is not entirely supported by the record as she reported that her pain was well managed by the pain clinic, her narcotic medications were ceased at one point as testing demonstrated that she was taking less than the prescribed dose, and in 2010 she stated that she had improved neck pain until four months earlier."  (Tr. 16).  The ALJ further concluded that Oberg's daily activities demonstrated a greater level of functioning than alleged and that her treating physician's indication that she was limited to less than sedentary exertion was entitled to only limited weight because it was "inconsistent with examination findings and the claimant's reported activities."  (Tr. 16).

The Decision Review Board selected the ALJ's decision for review and informed Oberg that it had ninety (90) days from the date it received the ALJ's April 16, 2010, decision to act on her claim, or the ALJ's decision would become the final decision of the Commissioner. (Tr. 4-6).  On August 19, 2010, the Decision Review Board informed Oberg that it did not act on her claim within the specified time frame and that the ALJ's decision was the final decision of the Commissioner. (Tr. 1).  Ms. Oberg

subsequently filed a complaint in this Court pursuant to 42 U.S.C. § 405(g).

### III. Facts

The administrative record contains the following facts. Oberg was 50 years old when the ALJ issued his decision on April 16, 2010. (Tr. 103). She claimed she became unable to work due to disability beginning on June 30, 2006, (Tr. 103, 110) due to chronic lower back pain caused by arthritis in her neck and a herniated disc, as well as chronic pain in her right arm. (Tr. 137). Oberg received a GED in 1978 (Tr. 143), and her relevant vocational history consisted of work as an engineer, real estate appraiser, driver, and security guard. (Tr. 138, 145).

Ms. Oberg has received treatment over several years for back, neck, knee, and elbow pain associated with her cervical degenerative disc disease, right knee degenerative joint disease, and thoracic cyst. A June 1, 2007, MRI of Oberg's lumbar spine revealed multilevel spondylosis[2] without evidence of lateralizing disc extrusion or limiting stenosis.[3] (Tr. 323). Dr. Sheldon Davis, Oberg's treating physician, noted on June 20, 2007, that

---

[2] The term "spondylosis" refers to "any lesion of the spine of a degenerative nature." Stedman's Medical Dictionary 1656 (26th ed. 1995).

[3] The term "stenosis" refers to a "stricture of any canal." Stedman's Medical Dictionary 1673 (26th ed. 1995).

4

Oberg could not sit or stand for greater than 10 minutes. (Tr. 364). On July 8, 2007, Oberg reported constant back, neck, knee, and elbow pain that limited her usual activities of making her bed, doing dishes, cooking, shopping, and driving. (Tr. 187). She explained that she "get[s] tired fast, cannot do anything for a period of time have to sit or lydown [sic]." (Tr. 187). A July 20, 2007, x-ray showed knee joint effusion.[4] (Tr. 230). Dr. Davis noted on July 26, 2007, that Oberg had multiple trigger points in her neck, middle back, knee area, hip, and ankle and diagnosed her with fibromyalgia. (Tr. 391).

 Oberg continued to experience pain and see physicians for treatment in August of 2007. On August 8, 2007, Oberg reported she lived independently in her apartment; cooked complete meals; had no problem attending to personal care matters such as dressing, bathing, and using a toilet; completed household chores such as cleaning, washing dishes, doing laundry, ironing, and making her bed; watched television; shopped in stores; drove; played cards; and could lift 10 pounds and walk two blocks. (Tr. 200-207). However, she also explained that pain persisted with any activities and that she could not sit for a long period of time. (Tr. 204-205). On an August 21, 2007, arthritis questionnaire, Dr. Davis reported Oberg had cervical and

---

[4] The term "effusion" refers to the "escape of fluid from the blood vessels or lymphatics into the tissues or a cavity." Stedman's Medical Dictionary 547 (26th ed. 1995).

lumbosacral degenerative joint disease. (Tr. 393). He stated her pain was intermittent and severe and in her neck it was stabbing and radiated down her left arm to her fingers. (Tr. 393). He further reported she had limited lumbosacral flexion and extension with pain that radiated down both legs to her feet (Tr. 393). Dr. Davis indicated on the questionnaire that she could not lift more than 5 pounds, that walking one block or sitting more than 15 minutes caused her to experience low back pain, and that rotation of her neck caused pain (Tr. 393). A September 3, 2007, MRI indicated Oberg had cervical spondylosis greatest at C5-C6 with disc osteophyte complex causing mild narrowing of the central canal and uncovertebral joint hypertrophy resulting in moderate bilateral foraminal stenosis (Tr. 240-244, 427-28).

On September 4, 2007, Dr. M. A. Gopal, a non-examining source, assessed Oberg's physical residual functional capacity ("RFC"). (Tr. 395-402). While he agreed with Dr. Davis that Oberg suffered from cervical and lumbar disc disease, he reported exertional limitations that conflicted with Dr. Davis's notes on his June 20, 2007, report and August 21, 2007, arthritis questionnaire. Dr. Gopal reported Oberg was not limited to lifting only five pounds but rather could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 396). And although Dr. Davis indicated that

6

walking one block or sitting more than 10 or 15 minutes caused Oberg to experience low back pain, Dr. Gopal concluded Oberg could stand, walk, or sit, with normal breaks, for a total of about six hours in an eight-hour workday.  (Tr. 396).  Finally, Dr. Gopal reported Oberg could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (Tr. 397).  Dr. Gopal reached these same conclusions when he assessed Oberg's RFC again on June 16, 2008 (Tr. 247-53).  Dr. Mark Colb, another non-examining source, also reached these same conclusions in his October 2, 2008, RFC assessment.  (Tr. 278-84).

On October 1, 2007, Dr. Ronald Rapoport examined Oberg.  His examination revealed decreased lateral rotation of the C-spine, good shoulder movement, full elbow extension, minor osteoarthritis in the hands, decreased rotation of the left hip, no effusion or erythema[5] of the knees, no sacroiliac joint tenderness, some mild spasm of the left paralumbar musculature, and zero of twelve tender points.  (Tr. 409).

From 2008 through 2010, Oberg received treatment from a number of physicians for her continued pain.  She had multiple MRIs, cervical fusion surgery, knee surgery, epidural steroid injections, and knee injections.  Oberg took pain medications, which helped to relieve her pain.  (Tr. 469, 473).  At one point,

---

[5] The term "erythema" refers to "[r]edness of the skin due to capillary dilation."  Stedman's Medical Dictionary 594 (26th ed. 1995).

however, a blood test demonstrated she was taking less than the prescribed dose and she had violated her medication agreement. (Tr. 506-07). Her prescription was consequently discontinued for some time, despite her protestations. (Tr. 506-07). While at times Oberg experienced reduced pain, her pain nonetheless persisted. At the hearing before the ALJ on March 9, 2010, Oberg reported she was in constant pain, could not sit or stand for any period of time, and had to lie down most of the time despite taking pain medication. (Tr. 27).

## IV. STANDARD

### A. Disability Determination Process

To be eligible for Social Security disability benefits, an individual must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is only disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled.

See 20 C.F.R. § 404.1520(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  Step one considers the claimant's work activity - if the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. § 404.1520(a)(4)(i).  Alternatively, if the claimant is not so engaged, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment.  See § 404.1520(a)(4)(ii); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).  To establish a severe impairment, the claimant must "show that [he] has an 'impairment or combination of impairments which significantly limits . . . the abilities and aptitudes necessary to do most jobs.'" Bowen, 482 U.S. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the claimant successfully establishes a severe impairment, the third step determines "whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Id. at 141 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  If so, the claimant is conclusively presumed to be disabled. Id.  If not, the fourth step evaluates whether the impairment prevents the claimant from performing his past work. Id.  A claimant is not disabled if that claimant is able to perform his past work. Id. (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).  If a claimant cannot perform this work, the burden shifts to the Commissioner

9

on the fifth step to prove that the claimant "is able to perform other work in the national economy in view of [the claimant's] age, education, and work experience." Id. at 142.  If the Commissioner fails to meet this burden, the claimant is entitled to benefits.  Id.

### B. Standard of Review

In reviewing SSDI determinations, district courts do not make *de novo* determinations.  Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  Instead, the Court "must affirm the [ALJ's] findings if they are supported by substantial evidence."  Cashman v. Shalala, 817 F. Supp. 217, 220 (D. Mass. 1993)(citing 42 U.S.C. § 405(g)); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

In addition to considering whether the ALJ's decision was supported by substantial evidence, a court must consider whether the proper legal standard was applied.  "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal."  Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

## V. DISCUSSION

Oberg argues the ALJ failed to properly weigh Dr. Sheldon Davis's opinion in accordance with applicable regulations of the treating physician rule. Dr. Davis examined Oberg on numerous occasions from 2007 to 2009. (Tr. 393, 503). After examining Oberg on June 20, 2007, Dr. Davis indicated she could not sit or stand for more than 10 minutes. (Tr. 364). On an August 21, 2007, arthritis questionnaire, Dr. Davis reported Oberg had cervical and lumbosacral degenerative joint disease with pain that radiated down both legs to her feet such that she could not lift more than 5 pounds, walking one block or sitting more than 15 minutes caused low back pain, and rotation of the neck caused pain. (Tr. 393). As the ALJ noted in his opinion, Dr. Davis indicated Oberg was limited to less than sedentary exertion. (Tr. 16). Yet the ALJ concluded that Dr. Davis's opinion was entitled to "limited weight as it is inconsistent with examination findings and the claimant's reported activities." (Tr. 16).

A treating source is defined by 20 C.F.R. §§ 404.1502, 416.902 as a patient's own physician, psychologist, or other acceptable medical source who has provided medical treatment in an ongoing way. A treatment provider's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d)(2); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002). Generally, treating sources are afforded more weight because they are the medical providers "most able to offer a detailed, longitudinal picture of the claimant's medical impairment(s)." § 404.1527(d)(2). When a treating source's opinion is not given controlling weight, the ALJ must determine how to weigh the opinion based on factors that include (1) the length of the treatment relationship, (2) the nature and extent of the treatment relationship, (3) the quality and quantity of evidence the source provided in support of the opinion, (4) whether the opinion is consistent with the record as a whole, and (5) whether the source is a specialist in the field. See § 404.1527(d). Yet an ALJ's failure to discuss these factors might not require remand "if it can be ascertained from the entire record and the ALJ's opinion that the ALJ "applied the substance" of the treating physician rule." Botta v. Barnhart, 475 F.Supp.2d 174, 188 (E.D.N.Y. 2007) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

It is not clear whether the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(d) and applied the substance of the treating physician rule in determining how to weigh Dr. Davis's

12

opinion.  Dr. Davis examined Oberg on many occasions from 2007 to 2009, and the Defendant does not dispute Oberg's claim that Dr. Davis is a treating source.  <u>See</u> Def.'s Br. at 18-21.  The ALJ nonetheless noted that Dr. Davis's assessment "is given limited weight as it is inconsistent with examination findings and the claimant's reported activities." (Tr. 16).  No further explanation for assigning limited weight to Dr. Davis's opinion is provided.  Moreover, the ALJ does not explain how the examination findings are inconsistent with Dr. Davis's opinion.[6]  Thus, while it appears the ALJ considered, without thoroughly explaining, whether Dr. Davis's opinion is consistent with the record, there is insufficient evidence that the ALJ considered the four remaining § 404.1527(d) factors listed above and applied the treating physician rule.

The Defendant's argument that the ALJ properly applied the treating physician rule of § 404.1527(d) to Dr. Davis's opinion is not persuasive.  The Defendant concedes the ALJ did not explicitly discuss the § 404.1527(d) factors but contends it can nonetheless be ascertained that the ALJ considered them.  With regard to whether Dr. Davis's opinion relates to medical issues in his area of specialty, the Defendant asserts the ALJ

---

[6] The ALJ points out that "Dr. Davis noted tender points while Dr. Rapoport found none." (Tr. 16).  However, he does not explain how this difference in examinations conducted approximately two months apart demonstrates that Dr. Davis's opinion that Oberg is limited to less than sedentary exertion is inconsistent with the examination findings.

considered Dr. Davis's "specialty as a 'M.D.'" (Def.'s Br. at 20) (quoting page 12 of the administrative transcript, which states "Records from Sheldon Davis, M.D., dated July 29 . . . ."). However, the ALJ does not report Dr. Davis's area of specialization within the medical field, and the ALJ's mere notation the first time he names Sheldon Davis in his opinion that Davis holds an M.D. degree does not demonstrate a consideration of Dr. Davis's area of specialization.[7] And with respect to the quality and quantity of evidence Dr. Davis provided in support of his opinion, the ALJ similarly does not appear to consider this factor.

The Defendant's claim that the ALJ appropriately considered the length, nature, and extent of the treatment relationship between Dr. Davis and Oberg in deciding what weight to give Dr. Davis's opinion is also unconvincing. Although the Defendant correctly observes that the ALJ described, over the course of his eleven-page decision, various treatments that Dr. Davis provided to Oberg on different dates, there is no evidence that the ALJ considered the particular length, nature, and extent of this treatment in deciding how much weight to allot to Dr. Davis's opinion. In fact, a consideration of those factors might be inconsistent with providing only limited weight to Dr. Davis's opinion given that Dr. Davis's treatment of Oberg occurred from

---

[7] The record does not disclose that Dr. Davis has an area of specialization.

2007 to 2009, involved many in-person examinations, and included treatment for her degenerative joint disease, fibromyalgia, and neck, back, and knee pain.

Thus, it is unclear whether the ALJ considered the § 404.1527(d) factors and applied the substance of the treating physician rule in deciding how to weigh Dr. Davis's opinion. Because the ALJ has failed "to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards," the case must be remanded to the ALJ so that he can apply the § 404.1527(d) factors and explain his application of the treating physician rule.  Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

## VI. ORDER

The Court **ALLOWS** Plaintiff's motion for remand [Docket No. 22], and **DENIES** Defendant's motion to affirm the Commissioner's decision [Docket No. 25].

                                    /s/ PATTI B. SARIS  
                                    Patti B. Saris  
                                    United States District Judge